UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

BRUCE STEWART, ET AL                          NO. 3:14-cv-00083-RGJ-KLH

VERSUS                                         JUDGE JAMES

RUSTON LOUISIANA HOPSITAL                      MAGISTRATE JUDGE HAYES
COMPANY, LLC D/B/A NORTHERN
LOUISIANA MEDICAL CENTER
A/K/A LINCOLN GENERAL HOSPITAL,
ET AL

## MEMORANDUM ORDER

Before the undersigned, on reference from the District Court, is a Motion to Remand,

[doc. # 10], filed by Plaintiffs Bruce and Sarah Stewart individually, on behalf of their minor

child, Destanee Stewart, and as representatives of a prospective class of other similarly situated

individuals.  Defendants Ruston Louisiana Hospital Company (dba Northern Louisiana Medical

Center), Community Health Systems Inc., Professional Account Services Inc., Women &

Children's Hospital of Delaware LLC (dba Women & Children's Hospital of Lake Charles),

National Healthcare of Leesville Inc. (dba Byrd Regional Hospital), and Community Health

Systems Professional Services Corporation oppose the Motion.  For reasons stated below, the

Motion is **DENIED**.[1]

## Background

On March 19, 2012, Plaintiffs filed a "Class Action Petition for Damages, Breach of

Contract, Declaratory Judgment, and for Injunctive Relief" against Defendant Northern Louisiana

Medical Center ("NLMC") in the Third Judicial District Court, Parish of Lincoln, State of

---

[1]  As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this Court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

Louisiana, alleging various violations of state law.  [doc. # 1-2].  According to the Petition, Destanee Stewart, an alleged insured under a Blue Cross Blue Shield of Texas health insurance policy, received medical care at NLMC for injuries sustained in an automobile accident on February 20, 2010.  *Id.* at 2.  Plaintiffs alleged that NLMC unlawfully engaged in "balance billing."  *Id.*  Plaintiffs alleged that NLMC "hired third party collection agencies . . . to refuse acceptance of the patients' health insurance and/or payment by the Plaintiffs' health insurer as full payment, and to collect directly or indirectly from the enrollees or insureds, by filing liens/privileges, which constitute actions at law, against Plaintiffs and members of the Class."  *Id.* at 8.  Plaintiffs asserted these claims individually and as the purported representatives of a class of similarly situated persons.  *Id.*

On December 18, 2013, Plaintiffs amended their original Petition to include claims against Community Health Systems Inc. ("CHS"), Professional Account Services Inc. ("PASI"), Women & Children's Hospital of Delaware LLC (dba Women & Children's Hospital of Lake Charles) ("W&C"), National Healthcare of Leesville Inc. (dba Byrd Regional Hospital) ("Byrd"), and Community Health Systems Professional Services Corporation ("CHSP").  [doc. # 1-3, p. 5].  Plaintiffs allege that CHS is the parent company of  NLMC, W&C, CHSP, and Byrd, and that CHS required those subsidiaries to follow "certain policies regarding billing of patient accounts and filing actions at law . . . ."  *Id.* at 8-9.  PASI, according to Plaintiffs, is a CHS subsidiary and a collection agency for NLMC, W&C, CHSP, and Byrd.  *Id.* at 9.

On January 16, 2014, Defendants removed the case to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA").  [doc. # 1].  More specifically, Defendants aver that they removed

pursuant to CAFA, 28 U.S.C. § 1453, which by its plain language, provides an

independent basis for removal jurisdiction as long as there is a class action and minimal diversity.  In the alternative, [Defendants] also removed the matter based on CAFA's original jurisdiction provision, 28 U.S.C. § 1332(d), as there is minimal diversity, an amount in controversy that exceeds $5,000,000 (exclusive of interest and costs), and 100 or more members of the Plaintiffs' proposed class.

[doc. # 28, p. 9].  Plaintiffs object to removal and argue that Defendants have not proven that the amount in controversy exceeds $5,000,000.  [doc. # 10-1, p. 5].  Plaintiffs argue further that even if Defendants prove that the amount in controversy is met, the matter should nonetheless be remanded because CAFA's "local controversy exception" applies.  *Id.*

Briefing is complete; the matter is before the Court.

## I. The Threshold Requirements for Original Jurisdiction are Satisfied

CAFA, codified in various sections of Title 28 of the United States Code, expands federal diversity jurisdiction over class actions.  A federal court has original jurisdiction over a class action if the amount in controversy exceeds $5,000,000, exclusive of interest and costs[2], and at least one class member is a citizen of a different state than one defendant.  28 U.S.C. § 1332(d)(2).  In addition, the proposed class must include at least 100 members.  *Id.* § 1332(d)(5).

Here, Plaintiffs do not contest the parties' minimal diversity or the size of the prospective class.  [doc. # 10-1, p. 4].  However, Plaintiffs do argue that Defendants have not presented any evidence to establish the requisite amount in controversy.  *Id.* at 5.  Defendants, in response, assert that "it was facially apparent, based on the allegations in Plaintiffs' First Amended and Supplemental Class Action Petition for Damages, that the amount in controversy for this matter exceeds $5,000,000, exclusive of interest and costs."  [doc. # 28, p. 15].  Alternatively,

---

[2] "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs."  28 U.S.C. § 1332(d)(6).

3

Defendants attach the "Declaration of Michael Lynch" and argue that the Declaration "ensures" that the amount in controversy is met.  [doc. # 28-1].  In the Declaration, Michael Lynch, the PLU Manager for PASI, avers that PASI collected the following amounts on behalf of the following hospitals through third-party liens: (1) NLMC, $4,240,669 from 2008-2013; (2) W&C, $1,751,626.58 from 2009-2014; and (3) Byrd, $4,169,470 from 2005-2013.  *Id.*  Defendants argue that the total amount collected on behalf of the hospitals ($10,161,765.58) easily exceeds the $5,000,000 jurisdictional threshold.

In non-CAFA cases, the removing party must prove by a preponderance of the evidence that the jurisdictional minimum exists.  *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).  "To satisfy the preponderance standard, the removing defendant may support federal jurisdiction either by establishing that it is 'facially apparent' that the claims probably exceed $75,000 or by establishing the facts in controversy in the removal petition or [summary judgment-type evidence] to show that the amount-in-controversy is met."  *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 774 (5th Cir. 2003); *accord St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1254 (5th Cir. 1998).  The Fifth Circuit has not specifically indicated, however, which party bears this burden when a motion to remand is filed in a CAFA case.[3]  Here, the Court need not address the issue because both parties agree that Defendants bear the burden. [*See* doc. #s 33, p. 5; 28, p. 16].

Considering Defendants' burden, the Court observes that removal cannot be supported by

---

[3] The general rule is that the party seeking federal jurisdiction bears the burden of demonstrating its existence.  *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (the party invoking jurisdiction bears the burden of establishing the requisite elements).

conclusory allegations. *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 n.7 (5th Cir. 1999). Defendants must do more than assert that a state law might allow a plaintiff to recover more than what is pled; defendants must set forth evidence that establishes that the actual amount in controversy exceeds the jurisdictional amount. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

Here, consistent with Louisiana law prohibiting plaintiffs from pleading specific amounts of monetary damages[4], Plaintiffs' Petition does not set forth damages with any specificity. [doc. # 1-3]. The Petition states that Defendants are liable to Plaintiffs for "repayment of the entirety of amounts collected by [Defendants] for all wrongful payments, for mental anguish, worry and concern caused by wrongful collection practices and collections, loss of profits or use, out-of-pocket expenses, emotional distress, as well as all other damages allowed by law, along with penalties, attorney's fees, costs, and expenses allowed by law." *Id.* at 17. The Petition also states that Plaintiffs "believe the number of individuals, during the relevant time period, exceeds 100 individuals." *Id.* at 10.

Upon consideration, Defendants have not proved that the un-quantified damages, unknown severity of damages, and unknown number of proposed class members, make it facially apparent that the amount in controversy exceeds $5,000,000. Nevertheless, Defendants have shown that the aforementioned Declaration, in addition to Plaintiff's claimed damages and attorney's fees, proves by a preponderance of the evidence that the jurisdictional threshold is met.

Plaintiffs argue that even though the Declaration states that Defendants collected over

---

[4] *See* LA. CODE CIV. PROC. art. 893.

5

$10,000,000 through third-party liens, the Declaration does not delineate how much of that sum was collected from members of the prospective class. As Plaintiffs word it, Defendants do not state "how much of that sum was collected as a result of balance billing persons with health insurance provided by an insurer with which the defendant hospital was contracted." [doc. # 23, p. 5]. For instance, much of the $10,000,000 sum could have been collected from uninsured individuals, individuals insured by insurers not contracted with Defendants, or individuals owing co-payments (i.e. not from victims of improper balance billing). In addition, it is conceivable that the $10,000,000 sum could comprise sums collected from debts pre-dating the commencement of Plaintiffs' healthcare provider contracts with Defendants.

That said, even though the exact percentage of the $10,000,000 attributable to the instant prospective class is somewhat ambiguous, it is likely that a significant percentage exceeds $5,000,000. Moreover, the sums collected on behalf of NLMC, W&C, and Byrd only date back, respectively, to 2008, 2009, and 2005. Plaintiffs' alleged "relevant time period" extends back to January 1, 2000. [doc. # 1-2, p. 4]. Thus, it is reasonable to conclude that PASI collected additional sums after January 1, 2000, but before 2008, 2009, and 2005. When the Court injects Plaintiffs' remaining prayers for damages due to mental anguish, worry and concern, loss of profits, out-of-pocket expenses, and emotional distress, as well as Plaintiffs' request for attorneys' fees[5], into the calculus, it becomes clear that Defendants have established the jurisdictional threshold by a preponderance of the evidence.

## II. CAFA's "Local Controversy" Exception Does Not Nullify Jurisdiction

---

[5] The Petition seeks attorneys' fees pursuant to LA. REV. STAT. ANN. § 22:1874(B). [doc. # 1-3, p. 14]. It is well-established that statutory attorneys' fees can be included in determining the jurisdictional amount. *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 536 (5th Cir. 1991).

While the Court finds that the threshold requirements for original jurisdiction are satisfied, the Court must nevertheless examine CAFA's exceptions to that jurisdiction.  The exceptions provide federal courts with discretionary authority to decline jurisdiction and also outline  circumstances where courts are required to decline jurisdiction.  Parties moving for remand must prove by a preponderance of the evidence that they fall within one of these exceptions.  *Williams v. Homeland Ins. Co. of N.Y.*, 657 F.3d 287, 290 (5th Cir. 2011) (citing *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 813-14 (5th Cir. 2007) ("*Preston II*").  "Congress crafted CAFA to exclude only a narrow category of truly localized controversies . . . ."  *Preston II*, 485 F.3d at 812.

Here, Plaintiffs invoke only the "local controversy" exception.  The exception provides that a district court *shall* decline jurisdiction:

(A)(i) over a class action in which--

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant--

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class

7

action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4).  The absence "of any one of the above elements would render remand

improper . . . ."  *Williams*, 657 F.3d at 291.

A.  <u>Whether Greater than Two-Thirds of the Proposed Class are Louisiana Citizens</u>

Plaintiffs must first prove by a preponderance of the evidence that greater than two-thirds of the prospective class members were citizens of Louisiana at the time the Petition was filed.  28 U.S.C. § 1332(d)(7).  Plaintiffs filed their Petition on March 19, 2012.  [doc. # 1-2].  Therefore, Plaintiffs must prove the citizenship of the class members as of that date.

Plaintiffs argue: "[T]he nature of the claims asserted and the location of the defendant hospitals [Ruston, Leesville, and Lake Charles, Louisiana] strongly indicates that more than two thirds of the plaintiffs reside in Louisiana. . . . Common sense leads to the conclusion that two thirds of such patients will be from Louisiana."  [doc. # 10-1, p. 6].  Plaintiffs proffer little evidence in support of their "common sense" argument.  They first attach an affidavit which attests to the citizenship of a prospective class in a separate class action involving a different defendant hospital and a different proposed class of plaintiffs.  [doc. # 10-7].  Their remaining evidence, language from NLMC's website, states that NLMC is "northern Louisiana's hometown hospital" and is "your community medical provider, serving the Piney Woods of North Louisiana and its residents."  [doc. # 10-1, p. 7].

"In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship.  A person's state of domicile presumptively continues unless rebutted with sufficient evidence of change.  Domicile requires the demonstration of two factors: residence and the intention to remain."  *Preston v. Tenet*

*Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797-98 (5ᵗʰ Cir. 2007) ("*Preston I*").  Courts are permitted to make "'a reasonable assumption' of CAFA's citizenship requirements from evidence that indicates 'the probable citizenship of the proposed class.'"  *Williams*, 657 F.3d at 291 (citing *Preston II*, *supra*).  Courts are not required to "engage in the arduous task of examining the domicile of every proposed class member before ruling on the citizenship requirement."  *Preston II*, 485 F.3d at 816.

In *Williams*, a plaintiff brought a class action in a Louisiana district court on behalf of a class of Louisiana medical providers.  *Williams*, 657 F.3d at 289.  The Fifth Circuit found that the following evidence sufficed to establish that well over two-thirds of the prospective class were domiciled in Louisiana at the petition's filing: a list of all the defendants' contracted-with-providers that fell within the class definition; Federal Tax-ID numbers of a potential class of providers; data from the Louisiana Secretary of State's public records database; an affidavit showing Louisiana mailing addresses; and a deposition of one defendant averring that all of the defendant's contracted providers were located in Louisiana.  *Id.* at 291.

A number of courts in the Fifth Circuit have held that the two-thirds requirement was met even when presented with arguably less evidence than that presented in *Williams*.  However, the key in those decisions was that the plaintiffs specifically defined the proposed class to include only persons or entities that resided in the local state.  Those courts acknowledged that when a proposed class is discretely confined to the local state, courts can utilize a common sense presumption in determining whether the citizenship requirement has been met.  For instance, in *Joseph v. Unitrin, Inc.*, the court concluded that the plaintiff met her burden, in part, by bringing the action "individually and on behalf of all similarly situated Texas residents."  *Joseph v.*

*Unitrin, Inc.*, 2008 WL 3822938, at *6 (E.D. Tex. Aug. 12, 2008).  The court stated specifically, "Because the putative class members are all alleged to be Texas residents, logic dictates that their homes, and by extension, their domicile, remains in Texas."  *Id.*  The court in *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 367 (E.D. La. 2007), came to the same conclusion when the plaintiffs sought to represent a class that included all Louisiana homeowners who had purchased insurance from the defendants.  The court stated, "Although there well may be proposed classes where detailed proof of the two-thirds citizenship requirement is required, the Court finds that common sense should prevail in this closed-end class . . . ."  *Id.* at 368.  *See also, e.g., Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 572 (5ᵗʰ Cir. 2011) (plaintiffs' statistical evidence, when combined with a description of the class as persons who purchased an insurance policy in Texas, established the two-thirds requirement); *Bennett v. Bd. of Com'rs for E. Jefferson Levee Dist.*, 2007 WL 2571942, at *4 (E.D. La. Aug. 31, 2007) (plaintiffs demonstrated the local nature of the class by confining the class to a specific area in Louisiana); *Coco v. Heck Indus., Inc.*, 2014 WL 1029994, at *4 (W.D. La. March 17, 2014) (two-thirds requirement met where class was confined to all persons who reside, or are domiciled in, Avoyelles Parish, Louisiana).

Contrary to the cases above, the court in *Preston I, supra*, concluded that the parties seeking remand failed to meet the two-thirds requirement.  There, patients, as well as relatives of deceased patients, brought a class action against various medical facilities, alleging personal injuries and wrongful deaths in connection with care provided in the wake of Hurricane Katrina. *Id.*  The parties seeking remand presented  Road Home Project[6] statistics, voter turnout statistics,

---

[6] The Road Home Project is a program funded by the U.S. Department of Housing & Urban Development, designed to help Louisiana residents rebuild their homes in the aftermath of Hurricanes Katrina and Rita.  THE ROAD HOME, https://www.road2la.org/ (last visited March 21,

and an affidavit from one facility's medical records director stating that 242 out of 299 patients

listed Louisiana addresses as their primary residence.  *Id.* at 798.  The evidence sufficed to

establish residency but failed to establish domicile.  The parties seeking remand made no effort

to provide citizenship data, vehicle registration information, or any other information concerning

an extended period of residency and employment in Louisiana.  *Id.* at 798-99.  In so finding, the

court stated:

> Indicators of a person's citizenship are often a matter of public record easily accessed
> by attorneys and investigators. . . . [A]s master of the complaint with the creative
> license for defining the putative class, the plaintiffs are in the best position to
> establish citizenship and produce probative evidence. . . . Despite the logistical
> challenges of offering reliable evidence at this preliminary jurisdictional stage,
> CAFA does not permit the courts to make a citizenship determination based on a
> record bare of any evidence showing class members' intent to be domiciled in
> Louisiana.

*Id.* at 801.

Here, Plaintiffs have failed to provide sufficient evidence to demonstrate that greater than

two-thirds of the prospective class members were citizens of Louisiana when Plaintiffs filed the

Petition.  Unlike in *Williams*, Plaintiffs have not submitted a list of the proposed class members,

tax identification numbers, data from the Louisiana Secretary of State's public records database,

affidavits showing Louisiana mailing addresses, or any other like evidence that might indicate

that over two-thirds of the proposed class were domiciled in Louisiana at the time the Petition

was filed.  Plaintiffs' proposed evidence, language from NLMC's website and data from a

separate class action, fails to compare even to the evidence submitted in *Preston I*, which held

that the evidence established residency but not domicile.

---

2014).

11

Moreover, Plaintiffs' prospective class is expansively defined and is not limited to citizens or residents of Louisiana:

> All persons who received "covered health care services" as defined by La. R.S. 22:1872(8) provided by [Defendants] and at the time of the covered health care services had "Health Insurance Coverage" as defined by La. R.S. 22:1872(18) with any "Health Insurance Issuer" as defined by La. R.S. 22:1872(19); and from whom [Defendants] sought to collect from a patient the "Health Insurance Issuer's Liability" as defined by La. R.S. 22:1872(20)(b); and/or from whom [Defendants] attempted to recover any amount in excess of the "Contracted Reimbursement Rate" as defined by La. R.S. 22:1872(7); and/or who paid [Defendants] in any manner including, but not limited to, liability insurance proceeds and/or from proceeds of a settlement or judgment, an amount in excess of the "Contracted Reimbursement Rate" either directly and/or through their attorney and/or through a liability insurance carrier and/or any third party.

[doc. # 1-3, p. 9-10].  Given the expansive definition—as well as the fact that Plaintiffs' allegations extend back to January 1, 2000—Plaintiffs' definition of the class could include residents and non-residents.  For instance, the Defendant hospitals could have treated and billed persons traveling through the state, persons transported into the state, or persons who were once domiciled in the state but changed their domicile prior to the Petition's filing.  The possibilities are too great for this Court to presume that more than two-thirds of the proposed class members are Louisiana citizens.

Without doubt, Plaintiffs, as masters of the complaint, could have lowered their evidentiary burden by styling the Petition in a manner that characterized the prospective class as residents or citizens of Louisiana, but chose not to.  Unlike the cases above that required only minimal evidence due to the discretely defined prospective classes, the definition of the class here necessitates much more detailed evidence.[7]

---

[7]  In their reply brief, Plaintiffs argue that "[i]t strains logic to claim that a third or so of the population has relocated to other states." [doc. # 33, p. 7].  However, Plaintiffs' focus on relocation

Ultimately, while there is some intuitive appeal to Plaintiffs' "common sense" argument, Plaintiffs have not  provided the necessary evidence.  *See Phillips v. Severn Trent Envtl. Servs., Inc.*, 2007 WL 2757131, at \*4 (E.D. La. Sept. 19, 2007) ("While the events alleged in the plaintiff's petition are undoubtably local in character, that is not sufficient to establish the CAFA-escape requirements mandated by § 1332(d)(4)."). As stated above, courts are permitted to make reasonable assumptions regarding CAFA's citizenship requirements, but only if they are first presented with evidence to that effect.  *Williams*, 657 F.3d at 291 (citing *Preston II*, *supra*). Because Plaintiffs have failed to present evidence sufficient to prove the requisite citizenship of the proposed class, CAFA's "local controversy" exception does not apply.[8]

### Conclusion

For the above-assigned reasons, Plaintiffs' Motion to Remand, [doc. # 10], is **DENIED**.

In Chambers, Monroe, Louisiana, this 25th day of March, 2014.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

is inapposite because Plaintiffs have not established that over two-thirds of the population were Louisiana residents to begin with.  The cases that referenced a "mass relocation"—referred to as a "mass exodus" in numerous cases—all involved petitions that inherently characterized the potential plaintiffs as local state residents.  *See, e.g., Bennett*, 2007 WL at \*5; *Joseph*, 2008 WL at \*6.

[8] As indicated above, the Court need not analyze the remaining "local controversy" elements because the absence of only one element renders remand improper.  In addition, because the Court finds removal proper under Section 1332 of CAFA, the Court need not examine Defendants' alternative argument that Section 1453 provides an independent basis for removal jurisdiction.  [*See* doc. # 28, p. 9].