UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

BRUCE STEWART, ET AL                                 NO. 3:14-cv-00083-RGJ-KLH

VERSUS                                               JUDGE JAMES

RUSTON LOUISIANA HOPSITAL                            MAGISTRATE JUDGE HAYES
COMPANY, LLC D/B/A NORTHERN
LOUISIANA MEDICAL CENTER
A/K/A LINCOLN GENERAL HOSPITAL,
ET AL

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a

Motion to Dismiss for lack of personal jurisdiction and for failure to state a claim upon which

relief can be granted, [doc. # 22], filed by Defendant Community Health Systems, Inc. ("CHSI").

For reasons stated below, it is recommended that the hybrid Motion be **GRANTED IN PART**

**and DENIED IN PART as MOOT**.

**I. Background**

On March 19, 2012, Plaintiffs filed a "Class Action Petition for Damages, Breach of

Contract, Declaratory Judgment, and for Injunctive Relief" against Defendant Northern Louisiana

Medical Center ("NLMC") in the Third Judicial District Court, Parish of Lincoln, State of

Louisiana, alleging various violations of state law.  [doc. # 1-2].  According to the Petition,

Destanee Stewart, an alleged insured under a Blue Cross Blue Shield of Texas health insurance

policy, received medical care at NLMC for injuries sustained in an automobile accident on

February 20, 2010.  *Id.* at 2.  Plaintiffs alleged that NLMC unlawfully engaged in "balance

billing."  *Id.*  Plaintiffs alleged that NLMC "hired third party collection agencies . . . to refuse

acceptance of the patients' health insurance and/or payment by the Plaintiffs' health insurer as

full payment, and to collect directly or indirectly from the enrollees or insureds, by filing

liens/privileges, which constitute actions at law, against Plaintiffs and members of the Class." *Id.*

at 8.  Plaintiffs asserted these claims individually and as the purported representatives of a class

of similarly situated persons.  *Id.*

On December 18, 2013, Plaintiffs amended their original Petition to include claims

against Community Health Systems, Inc. ("CHSI"), Professional Account Services, Inc.

("PASI"), Women & Children's Hospital of Delaware LLC (dba Women & Children's Hospital

of Lake Charles) ("W&C"), National Healthcare of Leesville, Inc. (dba Byrd Regional Hospital)

("Byrd"), and Community Health Systems Professional Services Corporation ("PSC").  [doc. #

1-3, p. 5].  Plaintiffs allege that CHSI is the parent company of  NLMC, W&C, PSC, and Byrd,

and that CHSI required those subsidiaries to follow "certain policies regarding billing of patient

accounts and filing actions at law . . . ."  *Id.* at 8-9.  PASI, according to Plaintiffs, is a CHSI

subsidiary and a collection agency for NLMC, W&C, PSC, and Byrd.  *Id.* at 9.

On January 16, 2014, Defendants removed the case to federal court pursuant to the Class

Action Fairness Act of 2005 ("CAFA").  [doc. # 1].  Subsequently, on February 19, 2014, CHSI

moved to dismiss Plaintiffs' claims against it due to lack of personal jurisdiction and failure to

state a claim upon which relief can be granted.  [doc. # 22].

Briefing is complete; the matter is before the Court.

## II. Personal Jurisdiction

CHSI posits that the Court should dismiss it due to lack of personal jurisdiction because it

has not purposefully availed itself of the benefits and protections of Louisiana.  [doc. # 22-1, p.

2].  In brief, CHSI argues that it is "a Delaware holding company with no employees, offices or

agents in Louisiana," . . .  "does not transact business in Louisiana, [] does not operate or even directly own" any of the other Defendant entities, . . . "is not registered to do business in Louisiana, [and] has not appointed an agent for service of process in Louisiana."  *Id.* at 2, 4. CHSI supports its contentions with the affidavit of Ben C. Fordham, the Senior Vice President and Chief Litigation Counsel for PSC.  [doc. # 22-2, p. 1].

Plaintiffs, in response, apparently concede that they are presently unable to make a *prima facie* showing of the required jurisdictional facts but argue that the Court should grant them an opportunity to conduct jurisdictional discovery before ruling on CHSI's Motion.[1]  [doc. # 34, p. 34].

A. Legal Standard

Courts are obliged to consider personal jurisdiction before reaching the merits of a claim. *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 (5th Cir. 1999) (citing *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)).  A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not transgress due process protections under the United States Constitution.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  Louisiana's long-arm statute extends jurisdiction to the full limits of the Constitution.  LA. REV. STAT. ANN. § 13:3201(B).  Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the non-resident defendant comports with federal due process.

---

[1] In fact, Plaintiffs state, "CHSI may not have had anything to do with its subsidiaries' balance billing policies and CHSI may be the dormant, hands-off parent holding company that it claims to be in its Motion and affidavit."  [doc. # 34, p. 17].

3

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

The "minimum contacts" prong divides contacts into those that give rise to general jurisdiction and those that give rise to specific jurisdiction. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). General jurisdiction may be exercised when a defendant's contacts with the forum state are "continuous and systematic," regardless of whether the action is related to the forum contacts. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Specific jurisdiction applies where the non-resident defendant has relatively few contacts with the forum state, but the suit arises out of or is related to the defendant's contacts with the forum. *Id.* "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [sic] contacts with the forum state." *Freudensprung, supra*.

Finally, when a court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, a plaintiff need only make a *prima facie* showing of the jurisdictional facts. *Freudensprung, supra*. The allegations in the plaintiff's complaint are accepted as true, except as contradicted by affidavits presented by the defendant, and conflicts in the affidavits are resolved in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). A court is not required to credit conclusory

4

allegations, even if uncontroverted.  *Id.* at 869.  "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

B. Jurisdiction Via Alter Ego Theory

Plaintiffs first theorize that CHSI is the alter ego of its subsidiaries.  [doc. # 34, p. 10].  The theory is that because CHSI and the subsidiaries are in effect the same entity, the subsidiaries' jurisdictional contacts—contacts that Plaintiffs argue "undisputedly" establish specific and general personal jurisdiction—are CHSI's contacts.  *Id.*

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).  However, courts can exercise personal jurisdiction over a corporation that would not ordinarily be subject to personal jurisdiction if the corporation is an alter ego of a corporation or entity that is subject to personal jurisdiction.  *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).  Stated differently, if the two entities are alter egos of each other, and thus constitute a single business enterprise, each entities' contacts are imputed to the other.

When determining whether "personal jurisdiction can be imputed through a parent-subsidiary relationship, [courts] begin with a presumption that the subsidiary, even one that is wholly-owned, is independent of its parent for jurisdictional purposes."  *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999).  Federal courts in Louisiana sitting in

5

diversity then look at the following non-exhaustive list of factors: (1) common ownership, directors, officers, employees, and offices; (2) unified control; (3) inadequate capitalization; (4) non-compliance with corporate formalities; (5) centralized accounting; (6) unclear allocation of profits and losses between corporations; (7) one corporation paying the salaries, expenses, or losses of another corporation; and (8) undocumented transfers of funds between entities. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010).[2]  "No one factor is dispositive." *Id.*  The Fifth Circuit has noted often that "100% stock ownership and commonality of officers and directors are not alone sufficient . . . ."  *Hargrave*, 710 F.2d at 1160 (citing cases). Moreover, "[w]here a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent."  *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331 (5th Cir. 2011).

Here, CHSI cannot be considered the alter ego of its subsidiaries.  With regard to the first factor listed above, CHSI presents an affidavit stating: "There is no overlap between the Board of Directors of [CHSI] and the Board of Trustees of the Hospitals, and there was no overlap at the time of the acts alleged in the case.  The Hospitals convene separate meetings of their respective Boards and maintain separate Board minutes and records."  [doc. # 22-2, p. 5].  In response, Plaintiffs submit a page from CHSI's website, as well as two print-outs from the Louisiana Secretary of State's website, that demonstrate significant overlap between CHSI's corporate officers and the officers of Byrd and PSC.  [doc. #s 34-2, 34-3, 34-4].  This factor arguably

---

[2] The Fifth Circuit, in *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 n.5 (5th Cir. 2011), held that "[a]n alter ego analysis in Louisiana diversity cases should be performed under factors enunciated under Louisiana law."

supports Plaintiffs' alter ego theory.

As to the second factor, unified control, Plaintiffs argue that CHSI required its subsidiaries to follow "certain policies regarding billing of patient accounts and filing actions at law . . . ."  [doc. # 1-3, p. 5].  Plaintiffs argue: "Are we to believe that these [three] hospitals, all undisputedly Louisiana domiciliaries, all undisputedly the subsidiaries of CHSI, each on their own accord decided to engage in identical balance billing practices . . . ?"  [doc. # 34, p. 14].  The "orders or directives" to engage in balance billing, according to Plaintiffs, "must have come from [CHSI]."  In support, Plaintiffs present the deposition[3] of Michael Ruff, the Chief Financial Officer for NLMC.  [doc. # 34-1].  Mr. Ruff essentially testified that NLMC follows a "CHS" billing policy.[4]  *Id.* at 54.

CHSI, in reply, argues that Mr. Ruff was referring to PSC (Community Health Systems Professional Services Corporation) not CHSI when he referenced CHS:

> [T]here is no specific reference to [CHSI].  Throughout the transcript, the witness references "CHS" and "Community Health Systems."  Mr. Fordham explained in his

---

[3] CHSI argues that Federal Rule of Civil Procedure 32(a)(1) prohibits the Court from considering the deposition transcript because CHSI was not represented at the deposition.  [doc. # 41, p. 4].  Rule 32(a)(1) states in pertinent part: ***In General***.  At a hearing or trial, all or part of a deposition may be used against a party on these conditions: (A) the party was present or represented at the taking of the deposition or had reasonable notice of it . . . ."  However, "Deposition testimony given on personal knowledge that is presented in lieu of affidavits may be considered by the court as substitute affidavits for purposes of motions that require support by affidavits, despite their inadmissibility under Fed. R. Civ. P. 32."  *Microsoft Corp. v. Very Competitive Computer Products Corp.*, 671 F. Supp. 1250, 1254 n.2 (N.D. Cal. 1987); *cf. Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966-67 (9th Cir. 1981) (no need to require the party presenting deposition testimony to obtain an affidavit reiterating the same information); *Bingham v. Jefferson Cnty., Tex.*, 2013 WL 1312563, at *6 (E.D. Tex. March 1, 2013) ("[A] deposition, while not meeting Rule 32's requirement, may still be considered under Rule 56 for summary judgment purposes as if it were a sworn affidavit.").

[4] Plaintiffs do not attach or otherwise identify the referenced policy.

7

> Affidavit the separate Defendant Community Health Systems Professional Services Corporation's ("PSC") relationship to NLMC.  Fordham Aff. at ¶ 21. Specifically, PSC is a party to a Management Agreement with NLMC through which PSC provides certain services.  *Id*. CHSI is **not** a party to that Agreement.  *Id*. Indeed, CHSI does not even have any employees.  *Id*. at ¶ 2. It is common for employees of NLMC to refer to Community Health Systems Professional Services Corporation as "CHS" or "Community Health Systems."

[doc. # 41, p. 4].  CHSI highlights the fact that Plaintiffs' counsel asked whether Mr. Ruff knew that the policy was a CHS policy, not whether Mr. Ruff knew it was a CHSI policy.  [doc. # 34-1, p. 54].  Aside from clarifying the import of Mr. Ruff's reference to CHS, CHSI also claims that its evidence, the affidavit of Ben Fordham, rebuts Plaintiffs' allegation.  Mr. Fordham avers that CHSI does not operate its subsidiaries, does not control the day-to-day operations of its subsidiaries, does not engage in negotiations with insurance carriers on behalf its subsidiaries, does not require its subsidiaries to adopt any bylaws, and does not require its subsidiaries to adopt or maintain policies used in billing patients or collecting for services provided to patients.  [doc. # 22-2, p. 2-6].

Mr. Fordham's affidavit contradicts Plaintiffs' allegation.  Thus, Plaintiffs' allegation that CHSI was the mastermind behind the alleged improper billing policies is not taken as true for purposes of this Motion.  In addition, Plaintiffs' proffered deposition testimony only establishes that PSC, not CHSI, implemented a billing policy at NLMC.  The deposition testimony does not directly conflict with Mr. Fordham's affidavit and thus does not serve to negate Fordham's statement that CHSI does not require its subsidiaries to adopt certain policies.  This is all to say that Plaintiffs' argument does not support a finding that CHSI and NLMC—much less the

8

remaining Defendant subsidiaries—were subject to unified control.[5]

Undeterred, Plaintiffs argue, essentially, that CHSI and PSC must be subject to unified control because CHSI and PSC share a website, www.chs.net.  CHSI, in reply, cites to the "Legal Information" portion of www.chs.net:

> Community Health Systems, Inc. is a holding company and does not engage in any business other than those activities associated with being a publicly traded (NYSE: CYH) stock company, such as, listing agreements with the New York Stock Exchange ('NYSE') and registration and compliance with the U.S. Securities and Exchange Commission ('SEC').  Community Health Systems Professional Services Corporation provides management services to Community Health Systems, Inc., including assisting it with its compliance obligations with both the NYSE and the SEC.  Both of these institutions require that public companies maintain information on an internet website that is accessible to shareholders; this website fulfills those obligations. The information contained in the website must be consistent with the official filings with the regulatory institutions. Integral to those requirements is that information be presented in a consolidated fashion and include statements and operating results for Community Health Systems, Inc. and its subsidiaries taken as a whole. Statements that include the words 'we,' 'us,' 'our,' 'the Company,' and similar inclusive words are intended to be summary information about the consolidation of Community Health Systems, Inc., and its subsidiaries taken as a whole, and are not intended to bind or imply that the actions of one legal entity should be attributed to the actions of another legal entity (such as Community Health Systems, Inc.). In its registered filings with the SEC, Community Health Systems, Inc., is required to adhere to the SEC's principles of 'plain English' and avoid the use of defined terms, jargon, and parenthetical exculpatory statements; for ease of reading, Community Health Systems, Inc. and Community Health Systems Professional Services Corporation adhere to those principles throughout this website. Each hospital affiliated with Community Health Systems, Inc. and Community Health Systems Professional Services Corporation is owned (or leased) and operated by a separate and distinct legal entity. Each such legal entity is responsible for the

---

[5] Supposing even that the Court did take Plaintiffs' allegation as true and found that CHSI implemented the alleged billing policy, the Court would nevertheless find that CHSI did not exercise the level of control necessary to establish an alter ego theory.  *See Hargrave*,710 F.2d at 1161 (holding that a parent company's complete policy-making authority over a subsidiary was not enough to warrant the exercise of jurisdiction over the parent company); *Logan Farms, Inc. v. Smithfield Foods, Inc.*, 2006 WL 626397, at *2 (S.D. Tex. March 9, 2006) (finding that a parent holding company exercised control over the general policy of its subsidiaries but holding, in line with other courts, that the involvement was insufficient to render the entities alter egos).

healthcare services delivered at its respective facility, employs its own management and other personnel, and grants medical staff privileges and credentials to its own, separate medical staff.

[doc. # 41, p. 6-7].  CHSI maintains that the website explains that:

> (i) CHSI is a holding company with no business activities other than those associated with being a publicly-traded company; (ii) both the [SEC] and the [NYSE] require CHSI to maintain a public website; (iii) PSC assists CHSI in its role as a publicly-traded company; and (iv) each hospital affiliated with CHSI is owned (or leased) and operated by a separate and distinct legal entity.  In other words, a portion of the website that Plaintiffs did not provide to the Court directly contradicts their contentions and corroborates Mr. Fordham's affidavit.

*Id.*

CHSI's argument is well-taken.  The "Legal Notice" on the website specifically informs readers that the site uses inclusory language such as "we" and "us" only to comply with SEC and NYSE requirements and not to imply that the site, or any of PSC's actions, can be imputed to CHSI.  In consequence, the website does not militate in favor of finding that CHSI and PSC are uniformly controlled.

Moving on, the Court observes that Plaintiffs make no argument and present no evidence concerning the remaining alter ego factors.  For instance, Plaintiffs do not argue that CHSI or its subsidiaries are inadequately capitalized, that the entities do not comply with corporate formalities, or that CHSI pays the salaries, expenses, or losses of its subsidiaries.  To recapitulate, the only evidence that Plaintiffs present that actually supports their alter ego theory is evidence of significant overlap between CHSI, Byrd, and PSC officers.  With that in mind, the Court follows the precedent observed in *Hargrave* and holds that significant commonality of officers and directors is not alone sufficient to establish an alter ego.  *See also Adm'rs of Tulane Educ. Fund*, 450 Fed. Appx. at 331 (finding a number of common officers and directors but

10

declining to hold that plaintiffs established an alter-ego relationship); *cf. Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (finding that even where one entity owned 100% of its subsidiaries, was responsible for corporate policy, funneled revenues into centralized accounts, and filed consolidated tax returns, the entity was still not an alter ego because these factors were outweighed by the entity's "modest" observation of corporate formalities).

     Plaintiffs evidence is ultimately outweighed by the evidence of corporate separation that CHSI has presented.  Accordingly, CHSI is not an alter ego of its subsidiaries, the subsidiaries' contacts cannot be imputed to CHSI, and Plaintiffs must therefore derive the grounds for exercising personal jurisdiction over CHSI from CHSI's direct contacts with Louisiana.[6]

C. Specific Jurisdiction

     Plaintiffs next theorize that CHSI has sufficient contacts with Louisiana in its own right. [doc. # 34, p. 12-13].  Plaintiffs argue that CHSI is subject to specific jurisdiction for many—if not most—of the same reasons that Plaintiffs argue CHSI is the alter ego of its subsidiaries.

     For example, Plaintiffs seem to argue that CHSI purposefully reached out to Louisiana by orchestrating the alleged improper billing policy.  [doc. # 34, p. 13].  They argue specifically, "the order or directive to balance bill came straight from CHSI, and that as its agents or instrumentalities, CHSI's subsidiaries are doing its bidding in Louisiana by implementing CHSI's balance billing policy, causing harm to Louisiana citizens." *Id.*  As to this argument, the Court refers the parties to Section II(B) above wherein the Court addresses Plaintiffs' identical argument and finds that Plaintiffs have produced no evidence to contradict CHSI's evidence

---

[6] Because the Court finds that CHSI is not the alter ego of its subsidiaries, the Court need not consider whether the subsidiaries are subject to personal jurisdiction.

establishing that CHSI is merely a passive holding company.  In the absence of any contradictory evidence, the Court cannot credit Plaintiffs' conclusory allegation.[7]

The Court finds similarly unavailing any argument that the website, www.chs.net, constitutes proof that CHSI purposefully reached out to solicit business in Louisiana.  [doc. # 34, p. 16].  Courts routinely hold that passive websites cannot support the assertion of personal jurisdiction over foreign defendants.  *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (finding no personal jurisdiction where a website provided a printable mail-in order form, defendant's telephone number, a mailing address, and an e-mail address, but where orders were not taken through the website); *Minge v. Cohen*, 2000 WL 45873, at *2 (E.D. La. Jan. 18, 2000) (no personal jurisdiction where a website contained information relating to its operations and stock, as well as a general introduction to the entity).  The website here is only passive in nature and does nothing more than advertise or provide general information about CHSI.  It does not demonstrate that CHSI purposefully availed itself of the privilege of conducting activities in Louisiana.[8]

Plaintiffs have done nothing to controvert CHSI's evidence establishing that CHSI is a holding company with no employees, no operational control over its subsidiaries, and no contacts with Louisiana.  Plaintiffs have not made a *prima facie* showing of jurisdictional facts sufficient

---

[7] To the extent that Plaintiffs argue CHSI is subject to personal jurisdiction simply by virtue of owning the local subsidiaries, the Court observes that "the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung*, 379 F.3d at 346.

[8] Even assuming the website is more than a passive website, Plaintiffs have failed to establish that their injuries arose out of or relate to the minimum contacts that the website might have created.

to support the exercise of specific jurisdiction over CHSI.[9]

## II. Jurisdictional Discovery

As noted above, Plaintiffs apparently concede that they are presently unable to make a *prima facie* showing of the required jurisdictional facts.  [doc. # 34, p. 34].  However, Plaintiffs argue that they will be able to carry their burden if the Court will grant them an opportunity to engage in targeted jurisdictional discovery.  *Id.* at 7.

The Court has broad discretion in all discovery matters.  *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).  "Discovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact.  When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."  *Id.* at 284 (citations omitted); *Freeman v. U.S.*, 556 F.3d 326, 342 (5th Cir. 2009).  Likewise, "where the discovery sought could not have added any significant facts," or where a party fails to identify the relevant evidence they expect to uncover, a court need not permit discovery.  *Wyatt*, 686 F.2d at 284 (citation omitted); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000).  "The party seeking discovery must make a 'preliminary showing of jurisdiction,' which is something less than a *prima facie* showing and requires the presentation of factual allegations that suggest with reasonable particularity the possible existence of the necessary contacts."  *Roman v. W. Mfg., Inc.*, 2013 WL 5533695, at *11 (W.D. La. Oct. 4, 2013) (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)); *see also Bell Helicopter Textron Inc., v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010) (stating courts need not allow plaintiffs "to

---

[9] Having determined that no minimum contacts exist to exercise jurisdiction over CHSI, the Court need not consider whether such jurisdiction would violate traditional notions of fair play and substantial justice.

13

conduct a fishing expedition seeking facts to support a claim of general jurisdiction.").

Here, Plaintiffs have not made a preliminary showing of jurisdiction because they fail to identify the specific evidence they expect to uncover.  Pursuant to Plaintiffs' theories of personal jurisdiction, Plaintiffs would have to identify, with reasonable particularity, the existence of possible facts indicating that CHSI either implemented an illegal billing policy (i.e. Plaintiffs' theory of specific jurisdiction) or exercises sufficient dominion and control over its subsidiaries such that CHSI is the alter ego of the subsidiaries (i.e. Plaintiffs' theory of vicarious general and specific jurisdiction).

With respect to the former theory, Plaintiffs argue that CHSI must have engineered the alleged illegal billing policy because nothing else would explain the fact that all of the subsidiaries enforce identical balance billing policies.  [doc. # 34, p. 14].  Surely, according to Plaintiffs, Defendants possess information regarding these alleged suspicious circumstances.  *Id.* Then, instead of explaining what specific evidence Defendants may be harboring, Plaintiffs vaguely assert that "jurisdictional discovery is necessary to confirm . . . CHSI's involvement in its subsidiaries' balance billing practices."  *Id.*  Similarly, Plaintiffs assert, "Plaintiffs believe that such discovery will reveal that CHSI is at the center of this balance billing operation."  *Id.* at 17. However, Plaintiffs never identify the specific facts they expect to uncover.  This omission is especially detrimental "where, as here, the defendant enters declarations into evidence specifically denying certain jurisdictional allegations."  *Bell Helicopter Textron Inc.*, 729 F. Supp. 2d at 797-98.

With respect to Plaintiffs' latter theory, Plaintiffs vaguely assert that "jurisdictional discovery is needed to determine the connections between the various business entities."  [*See*

14

doc. # 34, p. 12].  They assert further—again vaguely—that they "have sufficiently shown that CHSI's Motion to Dismiss raises factual issues that go directly to the list of non-exclusive factors used by Louisiana courts in determining" whether two entities are alter egos of each other.  *Id.* at 16.  In the haze of all this speculation, Plaintiffs again neglect to identify the possible evidence that may support their theory.

Plaintiffs' vague and conclusory assertions do nothing to rebut CHSI's evidence and do not illuminate any issues of fact that would warrant further discovery.  Jurisdictional discovery would serve little purpose.[10]  Accordingly, Plaintiffs' request for jurisdictional discovery is denied.

<u>**Conclusion**</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that the Motion to Dismiss for lack of personal jurisdiction filed by Defendant Community Health Systems, Inc. ("CHSI"), [doc. # 22], be **GRANTED**, and that Plaintiffs' claims be **DISMISSED**, **without prejudice**.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss for failure to state a claim upon which relief can be granted, [doc. # 22], be **DENIED as moot**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to

---

[10] *Cf. Weisler v. Cmty. Health Sys., Inc.*, 2012 WL 4498919, at *15 (D.N.M. Sept. 27, 2012); *Sizelove v. Woodward Reg'l*, 2011 WL 5087997, at *3 (W.D. Okla. Oct. 25, 2011) (disallowing jurisdictional discovery against CHSI in similar circumstances); [doc. # 22-2, p. 33-41 (granting a plaintiff's request for additional discovery to establish that CHSI operated a subsidiary and finding thereafter that none of the documents the plaintiff uncovered controverted CHSI's proffered affidavits)].

file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this 31st day of March, 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE