UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

BRUCE STEWART, ET AL                     CIVIL ACTION NO. 3:14-0083

VERSUS                                             JUDGE ROBERT G. JAMES

RUSTON LOUISIANA HOSPITAL            MAG. JUDGE KAREN L.  HAYES
COMPANY, LLC D/B/A NORTHERN
LOUISIANA MEDICAL CENTER
A/K/A LINCOLN GENERAL HOSPITAL,
ET AL

## RULING

Plaintiffs Bruce and Sarah Stewart, individually and on behalf of their minor child, Destanee

Stewart, (collectively "Plaintiffs")[1] brought this suit against Defendants Ruston Louisiana Hospital

Company, d/b/a Northern Louisiana Medical Center ("NLMC"); Women & Children's Hospital of

Delaware, LLC d/b/a Women & Children's Hospital of Lake Charles ("Women & Children's

Hospital"); National Healthcare of Leesville, Inc., d/b/a Byrd Regional Hospital ("Byrd Hospital");

Community Health Systems Professional Services Corp. ("Community Health Systems"); and

Professional Account Services, Inc. ("PASI") (collectively "NLMC") for purported violations of the

Health Care and Consumer Billing and Disclosure Protection Act, LA. REV. STAT. § 22:1871, *et seq*.

("Balanced Billing Act") and state contract law.

Pending before the Court is NLMC's Motion for Summary Judgment. [Doc. No. 98]. For the

following reasons, the motion is GRANTED.

---

[1]Daranesha Wright was also a named Plaintiff at one point in this litigation. However, she
has since been dismissed. Additionally, Community Health Systems, Inc. ("Community Health")
was a named Defendant, but has since been dismissed for lack of personal jurisdiction. [Doc. No.
51].

I.       FACTS AND PROCEDURAL HISTORY

This case concerns alleged violations of the Balanced Billing Act, a Louisiana statute which regulates a series of relationships between healthcare providers, insurers, and patients. Generally, the Act prevents contracted health care providers from collecting or attempting to collect amounts from the insured or enrollee that are the responsibility of the insurer. *See* LA. REV.STAT. § 22:1874, *et seq*.

On or about February 20, 2010, Destanee Stewart, a minor, was involved in a motor vehicle accident resulting in serious injuries. She was treated at NLMC in Ruston, Louisiana. At the time of treatment, her father, Bruce Stewart, was not physically able to notify NLMC that his daughter was insured. Bruce Stewart was insured under a Blue Cross Blue Shield of Texas health benefit plan offered through his employer, Trinidad Drilling, LP.[2] Destanee Stewart was a dependent under that plan.

According to NLMC, because it was unaware that Destanee Stewart was insured, and because she had been involved in an automobile accident, it filed a medical provider's lien pursuant to LA. REV. STAT. § 9:4752 in an effort to recoup the full amount ($3,939.33) of the services provided to her from any responsible third party.  Plaintiffs claim, however, that NLMC's practice was to file medical provider liens in such situations regardless of whether the hospital knew the patient was insured. *See* [Doc. No.  136, Michael Ruff Depo, p. 42]. Plaintiffs also assert that NLMC could have discovered Destanee Stewart's insured status with minimal effort.

---

[2]NLMC and Blue Cross Blue Shield of Louisiana had entered into a Member Provider Agreement whereby NLMC agreed to accept a discounted rate for certain services and not look to the insured for the remainder of the amount. Plaintiffs have admitted to lacking any third-party beneficiary status under the Member Provider Agreement. *See* Case 3:12-cv-01021-RGJ-KLH, [Doc. No. 34, p. 4-5].

Although NLMC sent a copy of the lien to Plaintiffs' attorney on or around March 16, 2010, and a Letter of Protection was requested from PASI on or around June 16, 2010, NLMC never billed Plaintiffs, nor did it pursue collection of the owed amounts. To this day, NLMC has not received compensation for Destanee Stewart's treatment. [Doc. No. 98-5, Lynch Affidavit].

On March 19, 2012, Plaintiffs filed this suit as a class action in Louisiana state court. [Doc. No. 1, Exh. A]. According to Plaintiffs, NLMC violated the Balanced Billing Act and the Member Provider Agreement by refusing to accept Bruce Stewart's health insurance as payment in full for the services provided to Destanee Stewart and by filing a lien against a potential third-party tort recovery. Plaintiffs also brought a breach of contract claim based on NLMC's alleged deviation from the Balanced Billing Act. Plaintiffs claimed that they and other members of the class were entitled to recover payments wrongfully made to NLMC, loss of profit damages, damages for emotional distress, damages for mental anguish, and injunctive relief.

On April 27, 2012, NLMC removed the case to this Court. However, on November 20, 2012, the Court remanded the case back to state court.

On December 18, 2013, while in state court, Plaintiffs filed a motion to amend and supplement the petition in order to name additional defendants. [Doc. No. 1-3]. According to Plaintiffs, Community Health, the parent company of NLMC, "created and maintained" the violations of the Balanced Billing Act. The violations were then implemented by PASI, a collection agency. Plaintiffs alleged that other subsidiaries of Community Health, including Women & Children's Hospital, Community Health Systems, and Byrd Regional "authored, implemented, and enforced" violations of the Balanced Billing Act. The motion to amend was granted concurrently

with NLMC's removal of the case to this Court on January 16, 2014.[3] [Doc. No. 1].

On March 17, 2014, Plaintiffs filed a motion to certify a proposed class of individuals similarly situated to themselves that had allegedly experienced violations of the Balanced Billing Act. [Doc. No. 36]. The Court referred the motion to Magistrate Judge Karen L. Hayes.

On July 22, 2015, NLMC filed the instant Motion for Summary Judgment. [Doc. No. 98]. On July 28, 2015, the Court granted Plaintiffs' motion to stay response deadlines to the Motion for Summary Judgment. [Doc. No. 104].

On January 27, 2016, Magistrate Judge Hayes held a hearing on Stewart's motion to certify class. The parties have filed supplemental briefing and the motion is pending.

On January 24, 2016, Plaintiffs filed a motion to lift the stay and reset briefing deadlines for the Motion for Summary Judgment. [Doc. No. 129]. On February 17, 2016, Plaintiffs filed their memorandum in opposition to NLMC's Motion for Summary Judgment. [Doc. No. 136]. NLMC filed a response on February 24, 2016. [Doc. No. 138]. The matter is ripe.

II.   **LAW AND ANALYSIS**

A.   **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of informing the court of the basis for its motion by identifying

---

[3]By the time the case was removed for a second time, diversity jurisdiction had been established under the Class Action Fairness Act.

portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"Only disputes over facts that might affect the outcome of the suit under governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*.

### B.    Choice of Law

This Court sits in diversity by virtue of the Class Action Fairness Act. "In diversity cases such as these, federal courts must apply state substantive law." *In Re Katrina Canal Breaches*

5

*Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78

(1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997)). The Fifth Circuit looks

to the decisions of the Louisiana Supreme Court in order to determine state law. "In the absence of

a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our

best judgment, how that court would resolve the issue if presented with the same case." *In Re*

*Katrina Canal Breaches Litigation*, 495 F.3d at 206) (citing *Am. Int'l Specialty Lines Ins. Co. v.*

*Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)). Courts in this circuit attempting to guess how

the Louisiana Supreme Court would rule on an issue are instructed to employ Louisiana's civilian

methodology which entails consulting primary sources of law such as the constitution, codes, and

statutes, before examining jurisprudence. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328

F.3d 192, 197 (5th Cir. 2003); *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169 (5th

Cir. 1999).

### C.    Balanced Billing Act Generally

The Balanced Billing Act, "in pertinent part, prohibits a [contracted] health care provider

from collecting or attempting to collect amounts from an insured patient in excess of the

contracted reimbursement rate:

> A.    (1)    A contracted healthcare provider shall be prohibited from discount
> billing, dual billing, attempting to collect from, or collecting from an
> enrollee or insured a health insurance issuer liability or any amount
> in excess of the contracted reimbursement rate for covered health care
> services.
>
> (2)    No contracted health care provider shall bill, attempt to
> collect from, or collect from an enrollee or insured any
> amounts other than those representing coinsurance,
> copayments, deductibles, noncovered or noncontracted
> healthcare services, or other amounts identified by the health

insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.

(3)    However, in the event that any billing, attempt to collect from, or the collection from an enrollee or insured of any amount other than those representing copayment, deductible, coinsurance, payment for noncovered or contracted healthcare services, or other amounts identified by the health insurance issuer as the liability of the enrollee or insured is based on information received from a health insurance issuer, the contracted health care provider shall not be in violation of this Subsection.

.....

B.    No contracted health care provider may maintain any action at law against an enrollee or insured for a health insurance issuance liability or for payment of any amount in excess of the contracted reimbursement rate for such services. In the event of such an action, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorneys fees and court costs. However, nothing in this Subsection shall be construed to prohibit a contracted health care provider from maintaining any action at law against an enrollee or insured after a health care issuer determines that the health insurance issuer is not liable for the health care services rendered."

LA. REV. STAT. § 22:1874*; see also Anderson v. Oschner Health Sys.*, 2013-2970 (La. 7/1/14); 172 So.3d 579, 582 (quoting same).

In addition to the Act's substantive provisions, LA. REV. STAT. § 18:2277 provides a mechanism for the attorney general to pursue violations of the Act under the Louisiana Unfair Trade Practices Act (" LUTPA").

In *Anderson*, the Louisiana Supreme Court addressed whether the statute also afforded a private right of action to individuals. The Court found that the Balanced Billing Act contained both an implied and express private right of action in addition to the express provision allowing the Attorney General to file suit under LUTPA. Central to the Court's conclusion was the Act's emphasis on consumer protection and exposing violators to more–not less–liability. *Anderson*, 172

So.3d at 584.  In discussing the implied private right of action in relation to the cause of action under LUTPA, the Court stated "[n]othing in the statute or the Act strips an aggrieved insured of his/her right to recover any property from which he/she was divested or prevent him/her from being made whole." *Id.*  The Court cited Louisiana Civil Code article 2315(A), the article which creates delictual liability in Louisiana, in support of that assertion.

Despite finding a private cause of action under the Balanced Billing Act, the *Anderson* Court left important questions unanswered, such as what prescriptive period applies to a Balanced Billing Act action.

### 1.    Applicable Prescriptive Period

NLMC initially argues that Plaintiffs' cause of action is delictual in nature and subject to a one-year prescriptive period. Because Plaintiffs filed this suit more than a year past the date they knew of the violation, their claim has prescribed. Plaintiffs respond that a violation of the Balanced Billing Act is subject to a ten-year prescriptive period. In support, they argue that the cause of action is contractual in nature because contracts underlie the relationship between both the healthcare provider/patient and the healthcare provider/insurer. The Court agrees with NLMC.

Under Louisiana law, causes of action can be divided into essentially four categories: offenses (delicts), quasi-offenses (quasi-delicts), contracts, and quasi-contracts. *See* Saul Litvinoff, 5 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 1.6 (2d ed. 1969). According to Litvinoff, the central distinction between contractual actions and delictual actions stems from the lawfulness of the action that creates the obligation. *Id.* Actions on contracts or quasi-contracts flow from obligations created by lawful actions . *Id.* Delictual obligations come from an unlawful act, whether it be laced with intent, such as an intentional tort, or negligence. *Id.* ("Delicts and quasi-delicts are

unlawful acts that cause damage, and their unlawfulness is the feature that distinguishes them from the previous two sources [contracts and quasi-contracts].").   Delictual actions have a one-year prescriptive period, while contractual actions must be brought within ten years. *See F.D.I.C. v. Barton*, 96 F.3d 128, 133 (5th Cir. 1996) ("Article 3499 provides a ten-year prescriptive period for personal actions...Article 3492 provides a one-year prescriptive period for delictual actions.").

In determining the prescriptive period for a cause of action, "Louisiana courts look to the nature of the duty that has been breached." *See Carriere v. Jackson Hewitt Tax Serv. Inc.*, 750 F.Supp.2d 694, 704 (E.D. La. 2010); *see also Kroger Co. v. L.G. Barcus & Sons, Inc.* 44-200, (La. App. 2 Cir. 6/17/09); 13 So.3d 1232, 1235 (citing *Roger v. Dufrene*, 613 So.2d 947 (La. 1993)); *Trinity Universal Ins. Co. v. Horton*, 33,157 (La. App. 2 Cir. 4/5/00); 756 So.2d 637.  "The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor whereas the latter flow from the violation of a general duty owed to all persons." *Thomas v. State Emp. Group Benefits Program,* 2005-0392 (La. App. 1 Cir. 3/24/06); 934 So.2d 753, 757. The concept of general duty in this context does not require that the duty be enforceable by the general public. *See Carriere ,*750 F.Supp.2d at 704.

Likewise, the existence of a contract between the parties is not determinative. *Id.* ("Plaintiff's allegations that she had a contract with the defendants, though relevant, are not dispositive of whether her claim is contractual or delictual in nature."). "[E]ven when a contract exists, unless a specific contract provision is breached, Louisiana treats the action as tort." *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009) (citing *Trinity Univ. Ins. Co.*, 756 So.2d at 638). Generally, violations of duties that arise from statute are delictual in nature. *See Reyes v. Julia Place*

9

*Condominiums Homeowners Ass'n., Inc.*, 12-2043, 2014 WL 7330602 at \*6 (E.D. La. Dec. 18, 2014); *see also Murray v. Cannon Cochran Mgmt. Servs., Inc.*, 14-310, 2014 WL 5794997, at \*13 (M.D. La. Nov. 6, 2014).

In addition, Louisiana courts sometimes apply other general principles in determining whether a cause of action is delictual or contractual: (1) courts sometimes look to the requested remedy to determine the appropriate prescriptive period. *Carriere*, 750 F.Supp.2d at 705 (citing *Fietz v. Southland Nat. Ins. Co.*, No. 05-0064, 2007 WL 1610772 at \*3 (W.D. La. June 1, 2007); (2) courts sometimes look to analogous provisions of Louisiana law when the prescriptive period is uncertain. *See Dean v. Hercules, Inc.*, 328 So.2d 69, 72 (La. 1976); *see also Richard*, 559 F.3d at 345.

Applying all of the above principles to this case, the Court finds that the appropriate prescriptive period for a cause of action based on a violation of the Balanced Billing Act is one year.

First, a violation of the Balanced Billing Act is unlawful and resembles an offense or quasi-offense. The Louisiana Supreme Court emphasized as much in *Anderson* when it noted that the Attorney General can pursue violations of the act under LUTPA. The unlawful nature of a violation of the Balanced Billing Act, and the fact that violation of it can be pursued by the attorney general, weighs in favor of a one-year prescriptive period. *See* 1 Aubry & Rau, CIVIL LAW TRANSLATIONS (OBLIGATIONS) § 305 (1965) ("[the] [i]mmediate foundation of obligations is either the law or an act of man. Obligations on the second kind may be founded either on a lawful act or an unlawful act. In the first case, they derive from a contract or a quasi-contract: in the second case, from an offense or a quasi offense.").

Second, NLMC's duty *to Plaintiffs* stems from the Balanced Billing Act (a statute), not a contract. To be sure, the Member Provider Agreement generally prohibits balanced billing. However,

10

Plaintiffs cannot enforce that agreement or claim its prescriptive period because they lack privity and/or third-party beneficiary status. *See Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 889 (5th Cir. 2002) ("Absent proof of contract and privity, the School board's contractual claims were properly dismissed, and it is not entitled to claim the benefit of ten-year liberative prescription applicable to actions *ex contractu*."); *see also Dugas v. Thompson*, 201-0178 (La. App. 4 Cir. 6/29/11); 71 So.3d 1059 (refusing to allow plaintiff to invoke ten-year prescriptive period where plaintiff was neither party to or third-party beneficiary of contract). "Duties imposed by statute are regarded as arising in tort, rather than contract." *Reyes*, 12-2043, 2014 WL 7330602 at *6; *Murray*, 14-310, 2014 WL 5794997, at *13; *see also Carriere*, 750 F.Supp.2d at 704 (holding that, even though the parties had a contractual relationship, a one year prescriptive period applied to cause of action based on failure to abide by a statute).[4]

Third, Plaintiffs mostly seek remedies such as lost profits, emotional distress damages, and mental anguish damages–remedies sounding in tort.[5] Non-pecuniary damages are only available for

---

[4]The Court finds the instant situation analogous to a claim by a third party against an insurer based on LA. REV. STAT § 22:1973, *et seq*. That statute allows a cause of action against an insurer for based on the insurer's bad faith, but it does not specify a prescriptive period. Some courts have held that when the **insured** brings a cause of action based on the statute, the action is subject to a ten-year prescriptive period . This is because the duties under the statute arise from a contractual relationship between the insurer and insured. *See Aspen Specialty Ins. Co. v. Technical Indus., Inc.*, No. 6:12-CV-02315, 2015 WL 339598 at *2 (W.D. La. Jan. 22, 2015). However, when a **third-party** brings the claim against the insurer, courts apply a one-year prescriptive period, presumably because the duty in that case arises from statute. *See Zidan v. USAA Property & Cas. Ins. Co.*, 622 So.2d 265, 266 (La. Ct. App. 1993). Similarly, Plaintiffs have no contractual recourse because they are not privy to the Member Provider Agreement. The Balanced Billing Act–a generally applicable statue–supplies their relief.

[5]In their Second Amended Complaint [Doc. No. 82], Plaintiffs also claim damages for money wrongfully paid to NLMC. Although this recovery sounds in contract or quasi-contract, it is clear at this point in the litigation that NLMC never recovered any money from Plaintiffs–directly or indirectly.

a breach of contract when the contract is intended to gratify a non-pecuniary interest and the obligor knew, or should have known, that his failure to perform would cause that kind of loss, or, the obligor, by his breach, intended to aggrieve the feelings of the obligee. *Davis v. Parker*, 1998 WL 307585 at *14 (5th Cir. May 12, 1998) (quoting LA. CIV. CODE ART. 1998).[6] Plaintiffs' pleadings fail to disclose any facts that could be interpreted to allow mental anguish damages under a breach of contract theory, a fact which weighs in favor of the application of the one-year prescriptive period.

Plaintiffs seek to counter, arguing that, by prohibiting contracted providers from "attempting to collect" amounts in excess of the contracted rate, the statute envisions mental anguish and emotional distress damages. If true, however, that argument would cut against a contractual prescriptive period: Article 1998 only allows non-pecuniary contract damages, such as mental anguish damages, in limited situations not applicable to this case. *See Dickerson v. Lexington*, 556 F.3d 290, 301-304 (5th Cir. 2009) (discussing, but ultimately avoiding the issue of whether statutes can confer non-pecuniary contractual remedies outside the dictates of Article 1998). Therefore, that the Balanced Billing Act even prohibits "attempts to collect" weighs in favor of a one-year prescriptive period.

Fourth, looking to analogous laws weighs in favor of a one-year prescriptive period. In *Anderson*, the Louisiana Supreme Court emphasized that the Balanced Billing Act is a consumer protection statute. *See Anderson*, 172 So.3d at 585. Many Louisiana consumer protection statutes contain one-year prescriptive periods. *See Carriere*, 750 F.2d at 706 (compiling list of Louisiana

---

[6]A contract intended to gratify a non-pecuniary interest means "a contract made 'to satisfy an interest of a spiritual order,' and includes contracts to make works of art, contracts to conduct scientific research, and other contracts pertaining to sentimental matters." *Pinero v. Jackson Hewitt Tax. Serv.*, 594 F.Supp.2d 710, 717 (E.D. La. 2009) (quoting 6 Saul Litvinoff, LA. CIV. L. TREATISE § 6.12 (2d ed.).

consumer protection statutes, including the LUTPA, that contain one-year prescriptive period). Although not dispositive, this reinforces the argument for a one-year prescriptive period.

Finally, language within *Anderson* itself indicates that the Louisiana Supreme Court would find violations of the Balanced Billing Act to be delictual in nature. For example, in noting that the Balanced Billing Act supplies a cause of action separate from an attorney-general initiated unfair trade practices suit, the Court quoted Article 2315(A)–the fountainhead of delictual liability in Louisiana.[7] *See Diamond Offshore Co. v. Survival Systems Intern., Inc.*, 902 F.Supp.2d 912, 923 (S.D. Tex. 2012) ("Tort claims under Louisiana law stem from Civil Code article 2315...").[8]

For the above reasons, a one-year prescriptive period applies to alleged violations of the Balanced Billing Act.

### 2.    Whether the Continuing Tort Doctrine is Applicable

The Court next addresses Plaintiffs' contention that NLMC's lien on Destanee Stewart's potential tort recovery constitutes a continuing tort. "The continuing tort doctrine provides that, when a tort occurs over a period of time, prescription does not begin to run until the defendant's harmful action has ceased." *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10); 45 So.3d 991, 1008 (J. Knoll concurring in part and dissenting in part). A continuing tort exists "where the operating cause of injury is a continuous one and gives rise to successive damages." *Crump v. Sabine River Auth.*, 98-2326 (La. 6/29/99); 737 So.2d 720, 726. Courts distinguish that concept from a "continuation of

---

[7]Louisiana Civil Code article 2315 (A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

[8]The Court has considered the multiple Louisiana trial court decisions that have found that a claim for a violation of the Balanced Billing Act prescribes in ten years. However, none of the courts give reasons for their decisions. *See* [Doc. No. 136, Exh. F-L].Thus, it is unclear whether they deserve this Court's respect.

the ill effects of the original, wrongful act," which does not create a continuing tort. *Id.* at 728.

Applying those principles, it is clear that the prescriptive period in this case began when NLMC filed a lien on a potential tort recovery. The lien was filed one time, and, although the ill effects of it may be continually felt, the act at issue occurred but once. *See Lejune Bros., Inc v. Petroleum Co., L.L.C.*, 2006-1557 (La. App. 3 Cir. 11/28/07); 981 So.2d 23, 34 (citations omitted). Thus, the continuing tort doctrine is inapplicable. Because Plaintiffs had notice of the lien more than one year prior to filing suit, their cause of action under the Balanced Billing Act has prescribed. [9]

Accordingly, NLMC's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' claim based on the Balanced Billing Act, and that claim is DISMISSED WITH PREJUDICE.

### D.  Breach of Contract Claim

In their Second Amended Complaint, Plaintiffs alleged that NLMC's lien on a potential tort recovery violated the implied contract between the parties. However, NLMC argues that Plaintiffs' counsel made the following statement in open court withdrawing any breach of contract claim:

> The breach of contract claim, that has been withdrawn. When we originally drafted this claim back, I cant remember how many years ago when the state court petition was filed, that was before the *Anderson v. Ochsner* decision from the Louisiana Supreme Court. That was a–it was a game changer in this litigation.
>
> The breach of contract claim is not necessary for us anymore, and we're happy to withdraw that at this point. And if you look at our class definition as currently proposed, there's no breach of contract claim in that class definition.

[Doc. No. 137, p. 44, Transcript of Class Certification Hearing].

Plaintiffs do not directly address this argument. Nevertheless, in their memorandum in

---

[9]Plaintiffs admit that their claims had accrued by June 16, 2010, when PASI wrote to their counsel requesting a Letter of Protection for the full amount of the outstanding balance.

14

opposition to the Motion for Summary Judgment–filed after their counsel purportedly withdrew the breach of contract claim in open court–they argue against summary judgment on the claim. The Court need reach this issue because the claim has no substantive merit.

Under Louisiana law, the essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor's failure to perform, and (3) the failure to perform resulting in damages to the obligee. *See Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1108-09 (citing *1436 Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So.2d 426-27 (La. App. 4 Cir 1986) Louisiana law has recognized a contractual relationship between a patient and healthcare provider. *See Howard v. Willis-Knighton Med. Cen.*, 40, 634 (La. App. 2 Cir. 3/8/06); 924 So.2d 1245, 1253. "The contractual relationship between a health care provider and patient may result from an express or implied contract, and the rights and liabilities of the parties thereto are governed by the general law of contract." *Id*. (citing *Spencer v. West*, 126 So.2d 423 (La. App. 2 Cir. 1961).

Normally, the healthcare/patient contract is thought of as a services contract: the healthcare provider agrees to render services to the patient using due care at a fair and reasonable price, and the patient agrees to pay a reasonable price for the services. In *Howard*, the court noted that the rights and liabilities under the contractual relationship are governed by the "general law of contract." *See Howard*, 924 So.2d at 1253. Seizing on that language, Plaintiffs cite Louisiana Civil Code article 2054, a general law of contract, which provides that "when the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied on a contract of that kind or necessary for the law to achieve its purpose." According to Plaintiffs, the law

implies that contracts between patients and healthcare providers will incorporate the provisions of the Balanced Billing Act.

First, Plaintiffs cite no authority in support of that argument, and the Court rejects it. Second, even if the argument had merit, summary judgment is appropriate on the breach of contract claim because Plaintiffs have shown no contract damages. Plaintiffs have admitted that NLMC never recovered anything from them, either directly or through a lien on a potential tort recovery. Their only damages would be non-pecuniary in nature. But Plaintiffs do not allege that the contract between the healthcare provider and patient is intended to gratify a non-pecuniary interest or that NLMC, through its breach, intended to aggrieve their feelings. Therefore, NLMC's Motion for Summary Judgment is GRANTED with respect to Plaintiffs' breach of contract claim, and that claim is DISMISSED WITH PREJUDICE.

### E.      Payment of Thing Not Owed

In Plaintiffs' memorandum in opposition to NLMC's Motion for Summary Judgment, they appear to allege a claim under Louisiana Civil Code article 2299 for payment of a thing not owed. That article provides, "A person who has received a payment or thing not owed to him is bound to restore it to the person from whom he received it." LA. CIV. CODE article 2299. This is the first time Plaintiffs have raised this argument.

When a claim is raised for the first time in response to a summary judgment motion, "the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n. 2 (5th Cir. 2008); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972). Rule 15(a) states in pertinent part: "[A]ny party may amend its pleading only with the opposing party's consent or the court's leave."

16

FED. R. CIV. P. 15(a). "In deciding whether to grant leave to file an amended pleading, the district court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Amendment would be futile in this case. First, NLMC did not receive any payment whatsoever from Plaintiffs. The article is inapplicable. Second, payment of a thing not due is an action based on quasi-contract. *See Garcia v. American Bank and Trust Co.*, 88-1810, 1988 WL 104825 at *2 (E.D. La. Oct. 5, 1988). Quasi-contracts arise from lawful acts, and a violation of the Balanced Billing Act is unlawful. *See Marine Design, Inc. v. Zigler Shipyards, a Div. of Leevac Corp.*, 791 F.2d 375, 377-78 (5th Cir. 1986) (holding quasi-contract claim did not lie where underlying action was unlawful). Thus, payment of a thing not due is not a viable cause of action in this case, and Plaintiffs' motion to amend contained in their opposition memorandum is DENIED.

## F.     The Motion for Class Certification

Also pending is Plaintiffs' motion to certify class. Because summary judgment is appropriate on the underlying claims, the motion is DENIED AS MOOT. *See, e.g., Saeger v. Pac. Life Ins. Co.*, 305 Fed. App'x. 492, 493 (9th Cir. 2008); *Mark v. Gawker Med. LLC*, 13-4347, 2016 WL 1271064 at *14 (S.D.N.Y. March 29, 2016); *Tsyn v. Wells Fargo Advisors, LLC*, 14-02552, 2016 WL 612926 at *1 (N.D. Cal. Feb. 16, 2016); *Hoge v. Parkway Chevrolet, Inc.*, 05-2686, 2007 WL 3125298 at *16 (S.D. Tex. Oct. 23, 2007) ("Because Parkway's summary judgment motion that the mailing Hoge received does not violate the FCRA is granted, Hoge's motion for class certification under Rule 23(b)(3) is moot."); *Alexander v. Stonebridge Life Ins. Co.*, 64-P-B, 2004 WL 741668 at *1

(N.D. Miss. 2004); *Sample v. Monsanto Co.*, 283 F.Supp.2d 1088, 1094 (E.D. Mo. 2003); *White v. Diamond Motors, Inc. d/b/a Diamond Nissan*, 962 F.Supp. 867, 868 n. 2 (M.D. La. 1997) ("since the Court has granted defendants' motion for summary judgment, the class action issue is now moot"); *Tuchman v. DSC Communications Corp.* 818 F.Supp. 971, 973 (N.D. Tex. 1993) (denying plaintiff's motion for class certification as moot because all of plaintiff's causes of action were dismissed); *Broussard v. South Central Bell*, 1992 WL 96304 (E.D. La. 1992) (denying motion for class certification as moot following dismissal of action on summary judgment).[10]

### III.   CONCLUSION

For the foregoing reasons, NLMC's Motion for Summary Judgment [Doc. No. 98] is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE. Plaintiffs' Motion to Certify Class [Doc. No. 36] is DENIED AS MOOT.

MONROE, LOUISIANA, this 27th day of April, 2016.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

---

[10]Even if summary judgment on Plaintiffs' claim does not moot the Motion for Class Certification, the motion must nevertheless be denied because Plaintiffs are not proper class representatives under Federal Rule of Civil Procedure 23(a)(4). Plaintiffs' claims are subject to a unique defense, namely prescription. When the representative parties' claims are subject to a unique defense, their claims are not typical of the class. *See Clancy v. Employers Health Ins. Co.*, 82 F.Supp.2d 589, 601 (E.D. La. 1999); *see also Malbrough v. State Farm Fire & Cas. Co.*, 1997 WL 159511 at *2 (E.D. La. 1997); *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334 (N.D. Ill. 1982).